ABRAHAM V. VAN FLEET, JOHN T. BIRD, HENRY C. PITNEY
AND ROBERT S. GREEN, VICE-CHANCELLORS.

---

CHARLES REEN and HIRAM REEN, surviving executors of
the last will of Philip Reen, deceased,

*v.*

GEORGE WILLIAM WAGNER, MARY WAGNER, AHIMAN R.
WAGNER and CHARLES W. WAGNER.

Where money or personal property is bequeathed to the *heirs* of A., or the
*heirs* of the testator, if there be nothing in the will to show that the testator

used the word "*heirs*" in a different sense, the next of kin are entitled to take under such description, they being the persons appointed by law to succeed to the personal property.

On bill and answers.

*Mr. Bartlett C. Frost,* for the complainants.

*Mr. Sylvester C. Smith,* for the defendant George W. Wagner.

*Mr. Paul A. Queen,* for the defendants Mary Wagner and others.

THE CHANCELLOR.

Philip Reen died in the month of September, 1875, leaving a will, to which two codicils were annexed, which was duly proved on the 29th of October, 1875.

The will bears date on the 12th of June, 1868, and, after providing some specific legacies, directs that all the testator's personal estate, "including bonds, notes and stock and other evidence of debt," shall be converted into cash within one year after his decease, which cash, after paying therefrom the debts and funeral expenses of the testator and the cost of a monument, is given and bequeathed as thereafter, in the will, the proceeds of the sale of the testator's real estate are bequeathed. Following this disposition of personalty is an absolute direction to the executors to sell the testator's farm at public vendue within two years after his death, after which direction the will continues in this language:

"I give and bequeath the proceeds thereof in equal shares as follows—one share to my son Charles—one share to my son Philip—one share to my son Hiram—one share to my son Jacob—one share to my son John—one share to my son Theophilus—one share to my daughter Mary Calvin—one share to my daughter Sarah Ann—one share to my daughter Hannah—one share to the daughter of my deceased daughter Elizabeth Gano—one share to the children of my deceased daughter Sophia Wagner.

"It is my will that one thousand dollars of the share of my real and personal estate hereby bequeathed to Albert Wagner, one of the children of

Reen *v.* Wagner.

Sophia, shall remain as a charge upon said real estate at lawful interest, said interest to be paid to said Albert annually during his life, and at his death the principal to his heirs."

By the first codicil to the will, which bears date on the 3d day of July, 1871, the provision, with respect to Albert Wagner, is changed by this language:

"And further in particular to the provisions in said will that one thousand dollars bequeathed therein to Albert Wagner shall remain as a charge on the real estate, which I hereby revoke and alter my said will and order and direct that the whole of the share bequeathed to said Albert shall remain as a charge on my real estate, whether said share will amount to one thousand dollars or not."

The testator's daughter Sophia died before the will was made, leaving two sons, Albert and George W. Wagner, and her husband, their father, survived her. The husband married again, and by his second wife had three children, the defendants Mary Wagner, Ahiman R. Wagner and Charles W. Wagner.

The share of the proceeds of the testator's real and personal estate which was to be divided between Sophia's children amounted to $2,863.19, one-half of which, $1,431.59, was invested by the executors of the will upon bond and mortgage upon the farm.

Albert Wagner died in April, 1891, unmarried and without leaving lawful issue. I understand that his father died before him.

The complainants, who are the surviving executors, are prepared to distribute the principal of the moneys invested for Albert, but are in doubt as to the proper meaning of the will. Albert's brother of the whole blood, George William Wagner, claims that he is entitled to the whole sum of money as the "heir" at law of Albert, insisting that the word "heirs," as used in the will of his grandfather, was intended, in its strict literal significance, and hence that the devolution of Albert's money should be to him alone, like real estate. *Rev. p. 297 § 2.* Upon the contrary, Mary Wagner and her brothers of the half blood claim that they are each entitled to one-fourth of the

moneys held for distribution, insisting that the word "heirs," as used in the will, is intended to signify the next of kin of Albert, including themselves, equally with Albert's brother of the whole blood.

It is the cardinal rule in the interpretation of wills that the testator's intention, as it is manifested by his will, shall control. In seeking that intention courts, by a long line of adjudications, have given a fixed meaning to certain phrases, words and methods of disposition, which govern where there is nothing in the will to clearly indicate that a different meaning was contemplated by the testator, and from such adjudications spring a large number of subsidiary rules for the interpretation of wills, which are from time to time invoked to solve perplexing questions of construction where it is doubtful what the intention was. Such rules are of the utmost importance in the interest of certainty in the disposition of property by will, putting it within the power of the intelligent scrivener to safely and accurately express that which the testator wishes. And for this reason these rules should not be departed from unless it clearly appears that the testator intended another meaning than that which they declare.

It is one of those subsidiary rules, that where personal property is bequeathed to the *heirs of A.*, or the *heirs* of the testator, that the next of kin are entitled to claim, under such description, as the persons appointed by law to succeed to the personal property. The reasoning upon which this rule rests is, that the term *"heir"* is naturally to be construed with reference to the species of property which is the subject of disposition, meaning next of kin when it is used in providing for succession to personalty. This rule is well established in this state, and applies where the bequest is of proceeds of the sale of real estate which is imperatively required to be converted into money before the distribution. *Scudder* v. *Van Arsdale, 2 Beas. 109; Welsh* v. *Crater, 5 Stew. Eq. 177, affirmed on appeal, 6 Stew. Eq. 362; Hayes* v. *King, 10 Stew. Eq. 1; Ward* v. *Dodd, 14 Stew. Eq. 414.*

Unless, then, it clearly appears by the will considered, that the testator meant to use the word *"heirs"* in the disposition of

.Albert's share, in its literal significance, by force of this rule of
·construction the fund in question must be divided among Albert's
next of kin—his brother of the whole blood and his sisters and
brothers of the half blood. *2 Bl. Com. 505 ; 2 Wms. on Exrs.
1511 ; 2 Kent Com. 422.*

Turning to the will, it is observed that the testator's scheme,
·after giving unimportant specific legacies and providing for his
·debts, funeral expenses and a monument, was to convert his én-
tire estate into money and divide that money in equal shares
·among his eleven children, the children of a deceased child
taking their parent's share. When the will was made two of
the testator's daughters had died, one, Elizabeth Gano, who left
·a daughter, to whom the testator gave the mother's share, and
the other, Sophia Wagner, who left two sons, to whom, also, the
· testator bequeathed their mother's share.

For some undisclosed reason the testator determined not to
·entrust a son, Theophilus, and his daughter Sophia's son Albert
with the entire principal of the portions of his estate designed
for them respectively, and hence he directed investments for
them, to the end that they might receive the interest of the funds
·during their lives.

The principal of these funds he gave to their " heirs."

Theophilus predeceased his father, leaving two sets of children,
·one by a deceased wife, legitimate, and the other by a woman
with whom he lived until his death and who survived him, ille-
gitimate ; and thereupon the testator added the first codicil to
his will, by which he divided the share of Theophilus between
his two sets of children.

It is pointed to as a significant fact that thus all known per-
sons of the testator's own blood, even the illegitimate children
of a son, were provided, for, and, at the same time, nothing
was left to the husbands of his deceased daughters or to the
woman with whom Theophilus lived at his death, and it is
argued therefrom that the testator thus so conspicuously confined
his bounty to those who partook of his blood as to plainly show
that his use of the word " heirs " was intended in its literal
sense, to keep his property within his blood. To further justify

Reen *v.* Wagner.

this argument reference is had to the language of the entire will, which, except in the use of this word *" heirs,"* appears to be well chosen and apt in expressing the testator's meaning.

At the discussion of this case by counsel I attached more importance to this view than now, upon more mature reflection, I think it deserves. When it is remembered that the rule which is invoked by counsel for the ·sisters and brothers of the half blood has been so long and well established, the intelligent comprehension of forms of testamentary disposition which the will exhibits, instead of having the effect of making me believe that the word " heirs " was intended in its literal sense, rather induces the belief that the testator intended the meaning which the law gives to that word when it is found in the connection in which it is used in the will. But, be that as it may, I do not think that the mere circumstance that the testator did in fact confine the definite indication of the immediate objects of his bounty to those of his ·blood is sufficient to show that he meant to use the word " heirs " in a sense different from " next of kin." If he had formed the clear determination to keep his estate within his blood, he evidently possessed sufficient intelligence to have distinctly said so, and enough sagacity not to leave the expression of his purpose to a single word, which is not fitted to the kind of property with which he dealt, and, therefore, becomes at least doubtful to one unacquainted with the rule referred to, which gives it a fixed meaning.

I will direct the complainant to distribute the fund in question in four equal parts—one part to each of the defendants.